**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

LAVELLE MALONE,

Plaintiff,

v.

JENNY McKINNEY, et al.,

Defendants.

CAUSE NO. 3:22-CV-274-JD-JPK

**OPINION AND ORDER**

Lavelle Malone, a prisoner without a lawyer, filed a "Motion For Leave To Amend and Request the Court for Permission to Amend Plaintiff's Complaint and Supplemental Pleading To Add Defendants" (Motion to Amend). [DE 23]. For the reasons that follow, Malone's Motion to Amend is denied.

**PROCEDURAL HISTORY**

Malone filed a pro se complaint on April 6, 2022, alleging Eighth Amendment deliberate indifference claims against various individuals and entities associated with medical care he received while incarcerated at the Miami Correctional Facility. [DE 2]. The Court's original screening order held that Malone had stated plausible claims against two unnamed nurses who allegedly ignored Malone's requests for pain medication and bandages to stop his bleeding for a period of an hour and a half while Malone was waiting to be transported to the hospital. [DE 13 at 3].

The Court held, however, that Malone failed to state plausible claims for deliberate indifference against (i) an unnamed doctor, and (ii) L. Ivers, Medical Service Administrator at the Miami Correctional Facility, because he alleged no supporting facts against those two defendants.

*See* [*id.* ("It is not clear whether they were ever present during the incident, what they were told about it, or what they personally did in response to it.")]. As to the unnamed doctor, the Court noted that, while Malone alleged that the unnamed nurses told him they needed the unnamed doctor's approval before he could be transported to the hospital, Malone did "not plausibly allege the doctor failed to reasonably respond—especially since he admits he was transported to an outside hospital for care an hour and a half after he arrived at medical." [*Id.* at 3-4].

Finally, the Court's original screening order held that Malone had failed to state a plausible *Monell* claim against Centurion, the company responsible for medical care at the Miami Correctional Facility. Although Malone alleged that Centurion's "policies on training all named defendants to respond reasonably to [his] serious medical need[s] are inadequate and pervasive," the Court held that he did not describe the policies in question "or provide any details to support such an assertion." [*Id.* at 5].

The Court's original screening order thus: (1) granted leave to proceed against Jane Doe Nurse #1 and Jane Doe Nurse #2; (2) dismissed Malone's claims against Centurion, L. Ivers, and John Doe Doctor; (3) dismissed all other claims including those against Centurion; (4) ordered Centurion to identify the names of Jane Doe Nurse #1 and Jane Doe Nurse #2; and (5) ordered Malone to file an amended complaint naming the correct nurses as defendants once they were identified. [*Id.* at 6-7].

Centurion filed a notice identifying the Jane Doe nurses on January 20, 2023 [DE 18], and, on February 8, 2023, Malone filed an Amended Complaint and Supplemental Pleading [DE 19] naming those two individuals as defendants. Specifically, in the currently operative amended complaint, Malone alleges that he was stabbed on the left side of his face above his eye by another inmate at the Miami Correctional Facility on August 28, 2021. He was taken to medical. Once

there, he was placed on a stretcher and handcuffed. Malone asked Jenny McKinney, RN, and Nurse Sakiru Taiwo Adetunji to help him several times. Despite the fact that he was "profusely bleeding" and in "great pain," they refused. [*Id.* at 2, 3]. They did not give him pain medication or attempt to stop the bleeding in any way. Instead, they simply told him they "had to call the unknown doctor to approve me to ride in an ambulance so I could go to an outside hospital for treatment." [*Id.*]. After an hour and a half without any treatment from Nurse McKinney or Nurse Adetunji, Malone was flown by a Lifeline Helicopter to a hospital in Indianapolis where he received care for his injuries.

The Court held in a subsequent screening order dated February 8, 2023, that the amended complaint's allegations were sufficient to state a plausible claim for deliberate indifference. Thus, the Court granted Malone leave to proceed against Nurse McKinney and Nurse Adetunji in their individual capacities for compensatory and punitive damages for being deliberately indifferent to the stab wound above his left eye on August 28, 2021, in violation of the Eighth Amendment. [DE 21].

Following the Court's grant of leave to proceed with the deliberate indifference claims against Nurses McKinney and Adetunji, Malone filed the present Motion to Amend, in which he seeks to amend the Amended Complaint and Supplemental Pleading, i.e., file a Second Amended Complaint, to add claims against the following additional defendants: (1) Centurion of Indiana, LLC; (2) John Doe, Chief Medical Officer; (3) John Doe, Director; (4) William R. Hyatte, former Warden of Miami Correctional Facility; and (5) Robert E. Carter Jr., Commissioner of the Indiana Department of Corrections (IDOC). [DE 23 at 2-4]. Malone states that his Motion to Amend is brought pursuant to "Footnote 1 and Footnote 2" in the Court's original screening order, wherein the Court stated the following:

> "[I]f information demonstrating [the unnamed doctor's or L. Iver's] liability becomes available—and Malone believes he can state a claim against them based on (and consistent with) the events described in this complaint—he may seek to amend his complaint pursuant to the Federal and Local Rules";

and

> "To the extent Malone is attempting to assert a failure to train claim [against Centurion], he has not plausibly done so" because he "has not pled any facts to plausibly suggest Centurion's failure to train its employees caused his constitutional injury."

[DE 13 at 4 n.1 and *id.* at 5 n.2].

**DISCUSSION**

Malone may only amend his complaint at this stage of the proceedings with the defendants' written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). He must also comply with both the Federal and Local Rules. The Local Rules of this District provide that "[m]otions to amend a pleading must include the original signed proposed amendment as an attachment." N.D. Ind. L.R. 15-1(a). They also require that an amended pleading "reproduce the entire pleading as amended," rather than simply incorporating a prior pleading by reference. N.D. Ind. L.R. 15-1(b); *see also French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009) (a party cannot amend his complaint in a piecemeal fashion because an amended complaint will supersede all earlier pleadings and control the case from that point forward).

Malone's Motion to Amend does not comply with the requirement of subsection (a) of Local Rule 15-1 of attaching a proposed Second Amended Complaint. And, if the Court were to construe the Motion to Amend itself as the proposed Second Amended Complaint, it would not comport with the requirements of subsection (b) of Local Rule 15-1 of reproducing the entire pleading as amended. Failure to comply with Local Rule 15-1, however, "is not grounds to deny

the motion." N.D. Ind. L.R. 15-1(c).[1] Nevertheless, the additional allegations provided in Malone's Motion to Amend do not give rise to any plausible claim against the newly identified defendants. Thus, Malone's Motion to Amend must be denied for this reason, as discussed more fully below.

1. *Monell Claim against Centurion*

As noted in the Court's original screening order, Centurion cannot be held liable solely because it employed medical staff involved in Malone's care. *J.K.J. v. Polk Cnty*., 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but such entities "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc*., 987 F.3d 647, 654 (7th Cir. 2021). "At the pleading stage . . . a plaintiff pursuing [a *Monell*] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Additionally, the plaintiff must allege that an official policy

[1] In addition to Local Rule 15-1, Local Rule 7-6 provides that "[t]he court may require parties representing themselves to use clerk-supplied forms." N.D. Ind. L.R. 7-6. Malone used the clerk-supplied form for his original complaint. [DE 2]. He did not do so when he filed the Amended Complaint and Supplemental Pleading [DE 19], but the Court in its discretion still approved it. [DE 19, 21]. Should Malone submit any proposed amendment going forward, he should (1) comply with Local Rule 15-1(b), i.e., reproduce the entire pleading as amended, and (ii) use the proper clerk-supplied form when attaching a proposed Second Amended Complaint to his motion to amend pursuant to Local Rule 15-1(a).

"was the 'moving force' behind his constitutional injury." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Here, without any elaboration, Malone states "Policy and Administrative Procedure 01-02-101" was the moving force behind the alleged constitutional violations he suffered. However, he does not explain how or why that general policy, which describes "the standards and guidelines used to provide, maintain, and improve the physical and mental health of adults and youths confined by the Indiana Department of Correction," caused him harm. *See https://www.in.gov/idoc/files/01-02-101-Health-Services-1-1-2018.pdf* (last visited Mar. 29, 2023). Of note, the Policy states:

> The health services provided shall include reasonable preventive services, routine care as directed by qualified health care professionals, necessary emergency care, specialist consultation when indicated, and hospitalization, when necessary. The Division staff shall distinguish between care that is necessary (and should be provided) and care that is desirable and not necessary (and should not be provided). Seriousness shall be the primary concern when determining whether care should be provided. Seriousness can be evidenced by loss of life or limb, production of significant pain, or significant impact on activities of daily living. When determining the necessity for care to be delivered through departmental resources, Division staff shall take into account the likelihood of a treatment's benefit to the individual offender patient and the likelihood of deleterious effects should treatments be delayed, either later during confinement or after the offender patient's release.

*Id*. Taking the allegations in Malone's Amended Complaint and Supplemental Pleading [DE 19] at face value, Nurse McKinney and Nurse Adetunji allegedly failed to provide Malone with constitutionally adequate health care *in spite of* this Policy, not *because of* it. Importantly, isolated instances of wrongdoing by a few employees cannot form the basis of a *Monell* claim. *Howell*, 987 F.3d at 654. Therefore, even if the additional allegations found in Malone's current Motion to Amend were credited, he has not stated a plausible *Monell* claim against Centurion based on the conduct of Nurse McKinney and Nurse Adetunji.

2. *Deliberate Indifference Claims Against the Additional Individual Defendants*

As explained in the Court's initial screening order, liability under 42 U.S.C. § 1983 is based on personal responsibility and defendants cannot be held liable for the misdeeds of other staff. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Malone states that CMO John Doe, L. Ivers, Warden Hyatte, and Commissioner Carter "knew of a substantial risk of harm to plaintiff and failed to act in disregard [of] that risk." [DE 23 at 3–5]. But Malone does not provide any details to support those conclusory allegations. He claims that these defendants' "action or inaction" caused the delay in his treatment, but he does not explain why. *Id*. These sparse allegations are insufficient to state any plausible claims for personal liability against the individual defendants identified in Malone's Motion to Amend. *See generally Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level") (internal quotation marks and citation omitted); *Bissessur v. Ind. Univ. Bd. of Trs*., 581 F.3d 599, 602 (7th Cir. 2009) (claim must have "facial plausibility" to survive dismissal). Thus, even if the additional allegations found in his Motion to Amend are credited, Malone has not stated any claims against CMO John Doe, L. Ivers, Warden Hyatte, or Commissioner Carter.

3. *"Final Policymaker" Allegation*

The Motion to Amend also asserts that Commissioner Carter "acting under color of state law is final policymaker." [DE 23 at 4]. This could be construed as an attempt to invoke the "final policymaker" basis for *Monell* liability. *See, e.g., Milestone v. City of Monroe, Wis*., 665 F.3d 774, 780 (7th Cir. 2011) ("For municipal liability under § 1983, the constitutional violation must be caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; *or* (3) *a decision by a municipal agent with 'final policymaking authority*.'" (quoting *Darchak v.*

*City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009) (emphasis added))); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009) ("It is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983[.]" (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986))). But Commissioner Carter is not a municipal agent for whom the final policymaker principle of *Monell* liability may be invoked. Moreover, Malone does not allege that any decision by Commissioner Carter, acting in his role as a final policymaker, was the cause of his allegedly unconstitutional treatment. Indeed, as previously discussed, the only official policy mentioned in Malone's Motion to Amend is a policy that Malone alleges was ignored by the persons rendering him medical care, not a policy that caused the alleged unconstitutional medical care.

An allegation of final policymaking authority against a state actor like Commissioner Carter is insufficient to render that state actor liable, whether in his individual or official capacity. To hold Commissioner Carter liable in his individual capacity, Malone would have to allege personal participation in the specific alleged wrongful conduct, and, as previously discussed, he has not done so. And any official capacity claim Malone intends to allege against Commissioner Carter would be barred by the doctrine of sovereign immunity, regardless of that official's alleged "final policymaker" status. *See Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001) ("The Eleventh Amendment, which precludes a citizen from suing a state for money damages in federal court without the state's consent, bars [the plaintiff's] claims against the Indiana State Prison and the Indiana Department of Corrections, both state agencies," and "[t]his principle also applies to suits for money damages against state officials in their official capacities[.]").

**CONCLUSION**

For the reasons stated above, the Motion to Amend [**DE 23**] is **DENIED.**

So ORDERED this 19th day of April, 2023.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT